# Robert M. Simmers, Agent in the Department of Dairy and Food Commissioner—Claims for Services.

There seems to be no authority which would authorize the payment of salary or wages to an employe of the state during the period of his suspension even though reinstated.

A man whose conduct is such as to invite investigation, followed by a suspension from office *ad interim*, and who, during the time of his suspension, renders no service and cannot render service to the state, can have no legal claim for the payment of the expenses he is put to in defending himself; nor does the fact that he is subsequently acquitted of the charge and reinstated entitle him to present such a claim.

SALARY OF SUSPENDED OFFICER—CLAIM FOR SERVICES DURING SUSPENSION—CLAIM FOR COUNSEL FEES.

Department of the Attorney General.

Opinion by J. HAMPTON CARSON, Attorney General, February 13, 1903.

To Jesse J. Cope, Dairy and Food Commissioner.

## OPINION.

I find in this department a letter from you, requesting an opinion under the following circumstances: Robert M. Simmers, an agent of your department, was, on account of alleged irregularities, discharged by Major Wells, in May, 1900. After the resignation of Major Wells, Secretary of Agriculture Hamilton was made temporary Dairy and Food Commissioner and reinstated Mr. Simmers, but suspended him pending an investigation of the alleged charges. The matter was referred to a committee, which, after full hearing, decided that, while all the charges had not been proved, yet Mr. Simmers was guilty of one of them, but as Major Wells had made a formal request to the Governor for his suspension, and had afterwards withdrawn his request and had retained Mr. Simmers, he could not at this time ask for his removal on those grounds; but the committee was of opinion that his suspension was sufficient punishment for the act, and recommended his reinstatement. Mr. Simmers was reinstated about October 1, 1900. As Mr. Simmers was sus-

pended by Prof. Hamilton, he requested him to close up his cases and render his bill for services. He has received certain amounts, and now makes a demand for the balance, which he claims to be due him, of $334, and attorneys' fees at investigation of $75.

Upon the foregoing facts, you request an opinion whether there is any warrant of law by which this amount can be collected.

I am of opinion that the view expressed May 17, 1901, by Attorney General Elkin, upon the case of Ambrose Little, was a correct exposition of the law and covers this case. In the Little case a claim was presented for salary during suspension, and the Attorney General wrote you: "The law authorizes payment only for services actually rendered, and as the agent, while he was suspended, did not render any service at all, I do not see how you could pay him under authority of law."

The present claim is for wages or salary, and for moneys expended for attorneys' fees in defending against the charges which led to the suspension. The claim wears two aspects, and these shall be dealt with separately.

1.  As to the claim for salary:

The words "wages" and "salary" are synonymous. The most approved lexicographers so regard them, and such is the view taken by the Supreme Court of Pennsylvania in the case of Com. ex. rel. Wolfe v. Butler, 99 Pa. 535. Salary is a sum of money periodically paid as compensation for services rendered. Such is the opinion of Chief Justice Sharswood, who points out that if there is any difference in the popular sense between salary and wages, it is only in the application of them to more or less honorable services, but that there is no legal distinction. The same view is taken in New York. In the case of Sniffen v. New York, 4 Sandford, 193, it was held that the term "salary" of itself imports a compensation for personal services.

Inasmuch as suspension prevents the rendering of the services, it is clear that there is nothing earned during the period of suspension. If it were otherwise, suspension would be ineffectual, for it would give the pecuniary benefit to the sus-

pended officer, while exacting no equivalent in service in return. The entire loss would then fall upon the public and not upon the officer. Reinstatement, while restoring the status of the individual and giving him the right to earn in future the salary attached to the post, gives him no claim for salary or wages during the period of suspension. There was and could be no opportunity during suspension to render the services for which the salary constitutes the compensation. This is necessarily involved in the very idea of suspension, which is not simply a moral, but a legal discipline, involving a double loss—a loss to the suspended officer and a loss to the public—for the services of the officer are irrecoverably lost and can never be made up to the Commonwealth. If a substitute be employed, the expense is at the cost of the public; if there be no substitute, the crippling of the service is still a loss to the State. Hence, it is clear that the suspended officer cannot point to the hardship of his own position and assert that the hardship falls upon him alone. I find no authority either in general principles of the law or in the statutes, which would authorize the payment of salary wages to a man under such circumstances, even though he be reinstated.

There are several instances in the Federal services where such a thing has been done, but it was under a special state of facts not found in the present case, and also under the authority of law. Such was the case in Collins v. United States, 15 Court of Claims Reps. 21; Kilburn's Case, 15 Court of Claims Reps. 41, and Collins' Case, 16 Opinions of Attorney General of the United States, 624. These cases differ materially from the one sub judice. In the present case, the feature of legislative authority covering the point is entirely lacking.

2. As to the claim of expenses and Attorney's fees:

A man whose conduct is such as to invite an investigation, followed by a suspension from office ad interim, and who, during the time of suspension, renders no service and cannot render service to the State, can have no legal claim for the payment of the expenses he is put to in defending himself; nor does the

fact that he is subsequently acquitted of the charge and reinstated entitle him to present such a claim.

In the case of Godman v. Meixel, 65 Indiana, 32, it was held that there could be no reimbursement for expenses caused by the officer's own default or negligence or violation of duty. There is no warrant of law for the payment of Attorney's fees for legal services rendered to himself at his request during the investigation, even though such services result in the establishment of his innocence. Nor can he recover from the State the amount of his mileage or witness fees. In this regard, he is in no worse position than any one who, though innocent, is charged with an offence in the Criminal Courts and is subsequently acquitted. He cannot expect the Commonwealth to pay his Attorney's or his witness fees, and I know of no instance in practice or under the authorities which would justify such a conclusion. If it were a civil suit, he could not claim, even though successful in its prosecution or in its defense, that the losing party should pay his fees or traveling expenses; in a case affecting himself, he is bound to be present either in person of by Attorney, and this means at his own expense. Whatever costs are allowed in civil cases to the successful litigant are taxed by the Courts and allowed because of express statutory provisions, or by rules of Court and long established practice. None such existing in the present case, I am of the opinion that there is no authority of law for the claim and that it must be disallowed.

Reported by Harry M. Bretz, Esq.,
Harrisburg, Pa.