# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Minor,                                    :
                              Appellant        :
                                               :
                    v.                         :     No. 948 C.D. 2016
                                               :     Submitted: December 2, 2016
Sgt. Dave Kraynak, D.K. Starling,              :
COI Walters, COI John Doe                      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER[1]                        FILED: February 17, 2017


Fred Minor (Minor) appeals, pro se, from the Order of the Court of Common Pleas of Schuylkill County (common pleas), sustaining the Preliminary Objections (POs) of Sgt. Dave Kraynak, D.K. Starling, COI Walters, and COI John Doe (together, Defendants). Minor is an incarcerated individual at the State Correctional Institution (SCI) at Frackville and Defendants are employees of the Department of Corrections (Department) at the same. (Compl. ¶¶ 3-7.) The Complaint asserts claims against all Defendants in their individual capacities under the Eighth and Fourteenth Amendments to the United States Constitution and for common law assault and battery. (Id. ¶¶ 48-56.) Common pleas sustained

---

[1] This case was reassigned to the authoring Judge on January 3, 2017.

Defendants' POs alleging that Minor's common law claims are barred by sovereign immunity and that Minor failed to exhaust his administrative remedies. Because it is not clear that sovereign immunity applies, and because common pleas should have conducted additional fact-finding to determine whether Minor exhausted his administrative remedies, we vacate and remand for further proceedings.

Minor's Complaint alleges as follows. On February 24, 2015, following an interview with the Security Lieutenant, Minor was escorted to the property room at SCI-Frackville. (Id. ¶ 10.) While handcuffed, Minor was locked in a cell in the reception area. (Id. ¶ 11.) Minor was wearing layers of heavy winter clothing and asked Kraynak to remove his handcuffs, "at least temporarily," so that he could shed some of the clothing. (Id. ¶ 12.) Kraynak refused to remove the handcuffs and told Minor to "stop complaining." (Id. ¶ 13.) Minor is claustrophobic and "began to sweat profusely from the lack of ventilation, heat and clothing he was wearing." (Id. ¶ 14.) Minor yelled out the cell door for help, only to receive the response from Kraynak that "you sound like you're breathing to me." (Id. ¶¶ 15-16.) Seeking fresh air, Minor laid prostrate on the floor and placed his face near the space between the door and the floor. (Id. ¶ 17.) Kraynak and Doe entered the cell and forcibly picked Minor up off the floor. (Id. ¶ 18.) Minor told Kraynak and Doe that he "was having difficulties breathing and the floor was the only air coming into the room." (Id. ¶ 19.) Kraynak responded that he did not care and directed Minor to stay the "h[**]l off the floor." (Id. ¶ 20.)

Kraynak and Doe left the cell, with Minor remaining handcuffed. (Id. ¶ 21.) Minor soon passed out and was awakened by kicks to his body by Kraynak and Starling. (Id. ¶¶ 23-24.) Doe was standing at the entrance of the cell, apparently

standing guard. (Id. ¶ 24.) Walters arrived and jumped on Minor and pulled a wool hat over Minor's face. (Id. ¶ 25.) All four Defendants then began to punch Minor in his head, face, and body. (Id. ¶¶ 26, 28.) Minor attempted to call for help, but his pleas were muffled by the hat pulled over his face. (Id. ¶ 27.) After four to five minutes of beating, Defendants ran away. (Id. ¶ 28.) Minor used a bar in the window to remove the hat from his face and saw a Lieutenant standing in the doorway of the cell. (Id. ¶¶ 29-30.) Minor was then taken to the medical department where he was examined and photographed. (Id. ¶ 32.) He was then taken to the Restricted Housing Unit and served with a disciplinary report. (Id. ¶ 33.) Minor immediately requested an inmate grievance form so that he could report the incident. (Id. ¶ 35.) He was told by an unnamed officer that he could not file such a grievance because Minor was served with a disciplinary report that day. (Id.) Minor requested an inmate grievance form the next day and was again told by an unnamed person that his "misconduct barred him from grieving the incident." (Id. ¶ 36.)

Kraynak later charged Minor with assault. (Id. ¶ 34.) A hearing was held by a Department hearing examiner on March 3, 2015. (Id. ¶ 37.) It was at this hearing where Minor completed a "misconduct inmate version form" alerting prison officials to the incident. (Id. ¶ 38.) Minor admitted to the hearing examiner that he kicked Kraynak during the incident, but asserted that it was in self-defense to the beating he was receiving by Defendants and requested that the hearing officer view the video and audio footage of the incident. (Id. ¶¶ 39-41.) Based on his admission of kicking Kraynak, Minor received 90 days in the Restricted Housing Unit. (Id. ¶ 42.) Minor appealed the hearing examiner's determination to

3

the Program Review Committee, and later to the Facility Manager, which were both denied. (Id. ¶¶ 43-46.)

The Complaint alleges that all four Defendants were employed at SCI-Frackville at all times relevant to the Complaint, and that while employed by the Commonwealth under the color of state law, acted outside the scope of their duties as employees of the Department. (Id. ¶ 8.) The Complaint specifically alleges that Kraynak, Starling, and Walters inflicted unnecessary and wanton pain upon him in violation of his rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution. (Id. ¶¶ 48-49.) It is further alleged that Kraynak, Starling, and Walters, acting intentionally and maliciously, committed the torts of assault and battery.[2] (Id. ¶¶ 50-51.) With regard to Doe, the Complaint alleges that Doe deprived Minor of his rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution by standing by and not intervening to prevent the assault upon Minor's person, and that by not intervening Doe acquiesced in the assault and battery committed by Kraynak, Starling, and Walters. (Id. ¶¶ 52-53.) The Complaint avers that, as a result of the Defendants' actions, Minor suffers, and will continue to suffer, "physical and emotional pain, fear, shock, panic attacks, paranoia, headaches, emotional stress[,] and constant body aches." (Id. ¶ 59.) The Complaint alleges that none of the Defendants are protected by sovereign immunity and seeks declaratory relief, as well as compensatory, punitive, and nominal damages. (Id. ¶¶ 56, 62-63.)

---

[2] "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. 1950)).

Defendants filed two POs on December 4, 2015.[3] The POs make a series of factual allegations. Most notably, the POs allege that although Minor alleges that he was not given the opportunity to file a grievance, Minor filed approximately five grievances between February 24, 2015 and June 1, 2015. (POs ¶¶ 9-10.) Attached to the POs were a "Grievance Packet," a spreadsheet showing grievances filed by Minor, and the unsworn declaration of the Department's custodian of grievance appeals purporting to show that Minor did not exhaust his administrative remedies. (Id., Exs. A-C.) Defendants further allege the following facts:

> 11. Grievance [No.] 554732 was completed on February 26, 2015 by Minor and received by the Institution on March 3, 2015.
>
> . . .
>
> 13. Grievance [No.] 554732 is regarding the underlying action, where Minor names only Sgt. Kraynak, fails to assert financial relief and a cause of action.
>
> 14. On March 11, 2015, Grievance [No.] 554732 was denied by Captain Downs.
>
> 15. On March 20, 2015, Minor appealed the denial to the next level of appeal.
>
> 16. On March 31, 2015, the Superintendent upheld the original response.
>
> 17. Minor never appealed Grievance [No.] 554732 to final review.

(Id. ¶¶ 11, 13-17 (record citations omitted).)

---

[3] Defendants moved for enlargement of time to file the POs, which was granted by common pleas on November 20, 2015.

Defendants' first PO is in the nature of a demurrer and alleges that Minor's assault and battery claims are barred by sovereign immunity. (Id. ¶¶ 20-25.) Defendants' second PO asserts that Minor's tort and constitutional claims should be dismissed because he did not exhaust his statutory remedy as required by the federal Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and its Pennsylvania counterpart, 42 Pa. C.S. §§ 6601 – 6608 (PLRA). (POs ¶¶ 26-40.)

Minor filed a memorandum of law in response to the POs as required by local rule.[4] Therein, he argued that Defendants are not entitled to sovereign immunity because they acted outside the scope of their employment. (Memorandum of Law at 2-3.) Minor alleged that whether a person acted within the scope of employment is ordinarily a question for the jury and that Defendants' PO should be overruled because it is not free from doubt that he will not be able to prove Defendants acted outside the scope of their employment. (Id. at 3.) Minor further argued that the exhaustion requirement only applies to his federal claims and not his state law tort claims. (Id. at 4.) And further, Minor contended that even assuming that he was required to exhaust his remedies, the remedial scheme was not available to him. (Id. at 5-6.) He claimed that he appealed Grievance No. 554735 to the Facilities Manager, not Grievance No. 554732, and was told that he was not allowed to file a grievance related to the February 24, 2015, incident because the incident related to an allegation of misconduct against him. (Id. at 5.) Minor alleged that the Exhibits attached to the POs "show forgery and variance"

---

[4] Schuylkill County Local Rule 1028(c)(3), Sch.R.C.P. No. 1028(c)(3), available at: http://www.co.schuylkill.pa.us/Offices/LawLibrary/CIVIL.pdf (last visited February 15, 2017).

and that the question of whether he exhausted his remedies is a question that should not be decided by preliminary objection. (Id. at 6.)[5]

Common pleas sustained Defendants' POs on March 14, 2016. With regard to Defendants' PO alleging sovereign immunity, common pleas noted that while sovereign immunity is an affirmative defense, it was appropriate to address the issue when raised as a preliminary objection because "under the [PLRA], 'the court shall dismiss prison conditions litigation at any time . . . if the court determines . . . the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief,' 42 Pa. C.S. § 6602(e)(2),"[6] and because Minor did not file preliminary objections to Defendants' POs. (Common pleas Op. at 3.) Common pleas held that Defendants were entitled to sovereign immunity, reasoning as follows.

---

[5] Minor also claims in his Memorandum of Law, for the first time, that he alerted the "Office of Special Investigations and Intelligence [at SCI-Frackville's] Central Office and was informed an investigation on the matter was tak[ing] place and would be notified at the conclusion," but that he received no notification. (Memorandum of Law, at 6.) However, a Memorandum of Law is not an Answer to the POs, and Minor cannot add new facts in such a document. Rule 1017 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1017. If Minor wanted to add facts to his Complaint in response to the POs, he should have filed a new complaint, which he was permitted to do as a matter of course, or filed a verified Answer to the POs. Rules 1028(c)(1) and 206.3 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. Nos. 1028(c)(1), 206.3.

[6] Section 6602(e)(2) of the PLRA provides in relevant part:

**(e) Dismissal of litigation.--**Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines any of the following:

. . .

(2) The prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted. . . .

42 Pa. C.S. § 6602(e)(2).

[T]he Plaintiff does not allege that any of the exceptions apply, but asserts that the correctional officers were not acting within the scope of their duties when they used excessive force on him. In reviewing the matter, we note that he has not alleged that the correctional officers were acting from personal concerns. Also, they were clearly on duty and working within the prison walls when they allegedly took the action. The Defendants have set forth an explanation for their actions that is consistent with their duties in addressing order and discipline within the prison. Further, if the allegations set forth in the complaint are true, the actions, while not condoned, are not unexpected. See Robus [v. Pa. Dep't of Corr., No. 04-2175], 2006 WL 2060615, at *9 [(E.D. Pa. July 20, 2006)] ("[s]uch acts, while barbaric, do not represent such a great departure from the roughhewn reality of a correction officer's daily routine as to fall outside of the scope of . . . employment.")

(Id. at 4 (citations omitted).)

With regard to Defendants' POs alleging the failure to exhaust administrative remedies, common pleas concluded that it was appropriate to resolve the factual dispute between the parties over whether Minor was able to file a grievance based on the documents attached to the POs. Common pleas concluded that Rule 1028 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P No. 1028, "requires courts to resolve factual issues related to the exhaustion of administrative remedies through review of relevant evidence." (Common pleas Op. at 7.) As to the substance of the PO, common pleas reasoned as follows.

[Minor] contends that he was informed that he could not file a grievance because the Department issued a misconduct related to the same incident. The Defendants, however, attached [Minor]'s grievance related to the incident to their preliminary objections. The Defendants also attach a spreadsheet of grievances that shows that [Minor] is aware of how to use the grievance system, but that he did not appeal this grievance through the three step process. [Minor] then asserts that he did attempt to file grievances but that he was informed that they were not received. He has not attached copies of these grievances to the complaint or asserted that they are available. Further, in his efforts to challenge the grievances that the Defendants

8

attached to the preliminary objections, [Minor] notes that the appeal was of grievance 554735 and not 554732 and that the Defendants changed the last number. He states that he did not appeal [G]rievance [No.] 554732 to the Facility Manager, but appealed [G]rievance [No.] 554735.

We note that [Minor] is not specifically challenging the inmate misconduct charge or proceedings, but is raising the issue of excessive use of force by the correctional officers. He was required to exhaust administrative remedies and, although he filed an initial grievance, did not take steps to complete the process through final review. Thus, [Minor] has failed to establish that he exhausted administrative remedies with regard to the constitutional claims. The preliminary objections are granted.

(Id. at 7-8.) This appeal follows.

On appeal, Minor argues[7] that common pleas erred in holding that Defendants are immune from the assault and battery claim because Defendants

---

[7] Minor's Amended Brief to this Court contains virtually no argument. Minor originally filed a brief on August 11, 2016, that contained extensive argument (Original Brief). However, we rejected the Original Brief on August 23, 2016, for failure to include, *inter alia*, a table of contents or citations, a statement of jurisdiction, a statement of the scope of review, a front cover, and a copy of common pleas' Order. In response, Minor filed his Amended Brief together with an Application for Relief on September 23, 2016. The Application for Relief includes most of the sections missing from his original brief and asks this Court to view these sections as amending the Original Brief. We rejected the Application for Relief on October 11, 2016, because Minor did not include a copy of common pleas' Order. Minor filed copies of common pleas' Order and Second Application for Relief on October 27, 2016, asking that we view all his previous filings together as supplementing his Amended Brief. We granted Minor's Second Application for Relief on November 2, 2016, stating "upon consideration of appellant's motion for leave to file an amended brief (supplement), the motion is granted, and the court accepts the supplement as compliance with the order of October 11, 2016." Pursuant to this Court's November 2, 2016 Order, we will treat the Amended Brief and other documents received as supplements to Minor's Original Brief. We acknowledge that this approach is not ideal and we expect all litigants, represented by counsel or not, to comply with the Appellate Rules. However, because this Court generally construes pro se filings liberally, Richardson v. Pennsylvania Insurance Department, 54 A.3d 420, 425 (Pa. Cmwlth. 2012), and Defendants did not object to

*(Continued…)*

9

were acting outside of their scope of employment. Minor further argues that common pleas erred in dismissing the entire Complaint due to his failure to exhaust administrative remedies because he was not given the opportunity to file a formal grievance on this matter. On this point, Minor argues that the documents attached to Defendants' POs are not originals and challenges their authenticity.

"Where a [court of common pleas] dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion." Kittrell v. Watson, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014). When considering preliminary objections, we must accept as true all well-pleaded material facts alleged in the complaint and all reasonable inferences deducible therefrom. Id. A preliminary objection should be sustained only in cases when, based on the facts pleaded, it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. Id. Because a preliminary objection in the nature of a demurrer presents a question of law, this Court's standard of review of a court of common pleas' decision to sustain a demurrer is de novo and the scope of review is plenary. Id. Similarly, whether immunity applies is a question of law subject to our de novo review. Feldman v. Hoffman, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014)

## Sovereign Immunity

As a preliminary matter, Minor objects to common pleas considering Defendants' affirmative defense of sovereign immunity in preliminary objections. Minor cites to Rule 1030 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P.

---

the Amended Brief or argue that, due to its form and content, they are unable to mount a defense, we shall proceed in this manner.

No. 1030, which states that immunity from suit is an affirmative defense that must be raised as new matter, not as a preliminary objection. While Minor is correct that immunity is properly raised as an affirmative defense, "courts have permitted limited exception to this rule and have allowed parties to raise the affirmative defense of immunity as a preliminary objection" if the defense is "clearly applicable on the face of the complaint." Sweeney v. Merrymead Farm, Inc., 799 A.2d 972, 975–76 (Pa. Cmwlth. 2002). Further, Minor has waived this procedural argument by not filing preliminary objections to Defendants' POs. Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014). Thus, we see no error in common pleas addressing Defendants' PO alleging that Minor's common law claims were barred by sovereign immunity.

Pursuant to Article 1, Section 11 of the Pennsylvania Constitution,[8] the General Assembly declared that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. This Court has held that "when an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." La

---

[8] Pa. Const. art. I § 11. Article 1, Section 11 states:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Id.

11

Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992). This Court determines whether a Commonwealth employee is protected by sovereign immunity by considering "whether the . . . employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity." Id.[9]

Minor does not argue that the Commonwealth waived immunity for the alleged conduct underlying his assault and battery claims. Instead, Minor contends that Defendants are not protected by sovereign immunity for their intentional acts because the actions underlying the assault and battery claims were outside the scope of Defendants' duties. We have said that:

> [c]onduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer.

Natt v. Labar, 543 A.2d 223, 225 (Pa. Cmwlth. 1988). According to Minor's allegations, Defendants were working within SCI-Frackville with the purpose of benefitting the Commonwealth, and there is no allegation that Defendants were acting out of some personal concern. Thus, Minor has limited our review to the

_____

[9] The nine exceptions to sovereign immunity are detailed in Section 8522 of the Judicial Code, 42 Pa. C.S. § 8522. The exceptions apply to a "Commonwealth party," which is defined as "A Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." Section 8501 of the Judicial Code, 42 Pa. C.S. § 8501.

12

sole question of whether Defendants' alleged conduct "is not unexpected by the employer." Id.

Federal Courts have held that "[a]n act is unexpectable by the master when it is done in a whimsical or outrageous manner," Haas v. Barto, 829 F. Supp. 729, 734 (M.D. Pa. 1993), aff'd sub nom. Haas v. United States, 27 F.3d 557 (3d Cir. 1994), and that "[t]o go beyond the scope of employment . . . an individual engaging in conduct that is otherwise incidental to the performance of work-related duties must act with a high degree of outrageousness," Ickes v. Grassmeyer, 30 F. Supp. 3d 375, 399 (W.D. Pa. 2014). Common pleas supports its conclusion that Defendants were not acting outside the scope of their employment by relying on Robus. There, Robus, an inmate at SCI-Graterford, alleged that he was physically abused by guards at the SCI in retaliation for filing a lawsuit against the SCI's healthcare coordinator. Robus, 2006 WL 2060615, at *2. The SCI's healthcare coordinator's husband (Husband) worked as a guard at the SCI. Id. Robus alleged:

> [H]usband[] repeatedly struck him, threw him against a wall, and injured his head and ribs. During the assault, [Husband] allegedly said to Robus: "Who the f[**]k are you to sue my wife," and "you better knock off all your lawsuit bullsh[**]." Referring to the restricted housing unit, located in death row, [Husband] declared, "I'll bury you in the hole and you'll never come out." At the direction of [Husband] or other Graterford officials, Robus was placed in the restricted housing unit that same day. Robus claims that, while in the restricted housing unit, he was beaten without cause by [two other prison officers], acting at the direction of [Husband] or other Graterford officials. This beating caused injuries to Robus's face, torso, and legs. Approximately one week after Robus was sent to "the hole," a prison doctor ordered him released.

Id. at *2 (record citations omitted).

13

Robus filed a suit in the United States District Court for the Eastern District of Pennsylvania asserting constitutional claims and claims of common law assault and battery against the health care coordinator, Husband, and the two other officers. The court refused to dismiss the state common law claim against Husband and the health care coordinator on the basis that Husband acted outside the scope of his duties because he acted for personal reasons and that the allegations against health care coordinator fell within the exception to sovereign immunity covering medical professional liability, Section 8522(b) of the Judicial Code, 42 Pa. C.S. § 8522(b). Robus, 2006 WL 2060615, at *8, *10. However, relevant to the instant matter, the court held that the two other prison officers who allegedly beat Robus were shielded by immunity because severely beating Robus "'while barbaric, do[es] not represent such a great departure from the roughhewn reality of a correction officer's daily routine as to fall outside of the scope of . . . employment.'" Id. at *9 (quoting Pizzuto v. Cnty. of Nassau, 239 F. Supp. 2d 301, 315 (E.D. N.Y. 2003)).

We are not bound by a decision of lower federal courts, In re Stevenson, 40 A.3d 1212, 1221 (Pa. 2012), and we cannot agree with common pleas and the Robus court that the Commonwealth expects its employees to conduct "barbaric" acts on inmates. Moreover, Robus's handling of the claims against the two prison officers appears to conflict with other district court decisions. In Velykis v. Shannon, No. 1:CV-06-0124, 2006 WL 3098025 (M.D. Pa. Oct. 30, 2006), a prison officer at SCI-Frackville was transporting Velykis, an inmate, to another SCI. Id. at *1. Velykis was handcuffed and shackled when he was ordered to exit the transportation van. Id. While Velykis attempted to exit the van safely by himself, the officer intentionally slammed the van door shut on Velykis' head. Id.

14

The officer told another officer looking on: "Well, at least we know he can take a shot." Id. Velykis was taken to the medical department where he received three stitches. Id. Velykis filed suit in the United States District Court for the Middle District of Pennsylvania, alleging, *inter alia*, a state law battery claim. Id. The officer moved to dismiss the battery claim on the basis of sovereign immunity. Id. at *2. The court rejected the sovereign immunity defense at the pleadings stage, concluding:

> The intentional use of force alleged here is not of a kind and nature [the officer] was employed to perform, it does not appear to have been intended to serve any purpose of the [Department], and while the Department would expect that force might be used at some point against an inmate, it would not expect the deliberate and unjustified use of force, apparently totally divorced from any need of the officer to exert control over the prisoner.

Id. at *4.

We believe that the standard adopted by the court in Velykis more effectively states the status of the law than the standard adopted in Robus and relied upon by common pleas. See, e.g., Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2006) (adopting the Velykis standard and finding that, for the purposes of that stage of the proceedings, the defendant acted outside the scope of his employment); Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *16 (E.D. Pa. June 6, 2007) (same); cf. Gray v. Wakefield, No. 3:CV-09-0979, 2014 WL 2526619, at *3 (M.D. Pa. June 4, 2014) (relying on the Velykis standard, but concluding that the defendant acted in a manner not divorced from the need to exert control over the inmate). Thus, we conclude that a prison guard acts outside the scope of his duties when he or she uses "deliberate and unjustified" force on an

15

inmate "totally divorced from any need of the officer to exert control over the prisoner." Velykis, 2006 WL 3098025, at *4.

Applying the Velykis standard to the facts alleged herein, it is not clear that Defendants are entitled to sovereign immunity. Minor alleges that, while he was already handcuffed, Defendants beat him in the head, face, and body for four to five minutes and muffled his pleas for help by placing a wool hat over his head. (Compl. ¶¶ 25-29.) While Minor admits that he kicked at least one officer in self-defense (Id. ¶ 42), accepting as true all material allegations and reasonable inferences deducible therefrom, it is not clear that the initiation or extent of the beating was justified or related to the need to exert control over Minor.

Common pleas also erred by considering Defendants' explanation for its actions in resolving Defendants' demurrer. Common pleas' holding relied, in part, on its conclusion that "[t]he Defendants have set forth an explanation for their actions that is consistent with their duties in addressing order and discipline within the prison." (Common pleas Op. at 4.) It is well-settled that our consideration of a demurrer is limited to the complaint and we "cannot consider matters collateral to the complaint." Stilp v. Commonwealth, 910 A.2d 775, 791 (Pa. Cmwlth. 2006), aff'd sub nom. Stilp v. Commonwealth, Gen. Assembly, 974 A.2d 491 (Pa. 2009). A defendant's attempt to supply facts in a demurrer "makes the preliminary objection in the nature of a demurrer an impermissible 'speaking demurrer.'" Id. Defendants may assert facts showing that the allegations are not true or that the actions were not unexpected by the Commonwealth as an affirmative defense. But a demurrer is not an appropriate avenue to assert such facts. We, therefore, conclude that common pleas erred in sustaining Defendants' PO in the nature of a demurrer alleging sovereign immunity.

16

**Failure to Exhaust**

The federal Prison Litigation Reform Act mandates that inmates exhaust "administrative remedies as are available" before filing suit asserting federal claims. 42 U.S.C. § 1997e(a). Pennsylvania also has its own prisoner litigation statute, the PLRA, applying an almost identical standard for claims in Pennsylvania courts arising under federal or state laws. 42 Pa. C.S. § 6603. Section 6603(a) of the PLRA provides: "Prison conditions litigation filed in or remanded to a court of this Commonwealth alleging in whole or in part a violation of Federal law shall be subject to any limitations on remedies established by Federal law or Federal courts with respect to the Federal claims." 42 Pa. C.S. § 6603(a). Because the entirety of Minor's complaint is prison conditions litigation, and because he raises a claim under the United States Constitution, the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to him.

The exhaustion of administrative remedies provision of prison litigation reform laws were enacted

> to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a . . . case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.

Porter v. Nussle, 534 U.S. 516, 524–25 (2002). The United States Supreme Court has held that "proper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quotation omitted) (emphasis in original). A necessary corollary to the requirement that parties properly follow the administrative procedures is that if an agency prevents a party from pursuing a remedy, the

17

agency does not "hold out" a remedy, and the remedy cannot be exhausted. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) ("The [federal] PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'"); see also Small v. Camden Cnty., 728 F.3d 265, 273 (3d Cir. 2013) (concluding that failure to receive a response to a grievance shows that the appeal process was "unavailable to him"). The burden is on the defendant to plead and prove the affirmative defense of failure to exhaust; "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).

In Kittrell, we explained the Department's administrative procedures, the Inmate Grievance Review System (Grievance Policy), as follows:

> Pursuant to DOC's Inmate Grievance Review System, 37 Pa. Code § 93.9 (incorporating [The Department's Grievance Policy,] DC–ADM 804), inmates may seek resolution of problems or issues of concern arising during the course of their confinement (Grievance Process). The Grievance Process consists of three steps.
>
> In Step 1, an inmate must submit the initial grievance to the Grievance Coordinator within 15 working days of the initial incident. The Grievance Coordinator then has 15 working days to provide a written response.
>
> In Step 2, an inmate must appeal the grievance response to the Facility Manager or Superintendent within 15 working days of receiving it. In turn, the Manager or Superintendent must notify the inmate of his decision within 15 working days of receiving the appeal.
>
> If still dissatisfied, an inmate in Step 3 must submit the final appeal to the Secretary's Office of Inmate Grievances and Appeals (Central Office) within 15 working days of receiving an appeal response. The Central Office then has 30 working days to respond to the inmate. The Grievance Process thus culminates in the Central Office's response.

Kittrell, 88 A.3d at 1092-93.

18

Here, the "Grievance Packet" attached as an exhibit to the Department's POs shows that a grievance was received and processed by the Facility Grievance Coordinator on March 3, 2015. (POs, Ex. A.) The Grievance is dated February 26, 2015, and labeled Grievance No. 554732. (Id.) The Grievance Packet next contains a grievance denial dated March 11, 2015. (Id.) This denial was originally numbered Grievance No. 554735, but the grievance number was crossed-out by hand and rewritten as Grievance No. 554732. (Id.) The Grievance Packet next includes an appeal of Grievance No. 554735, which was filed by Minor on March 20, 2015. This appeal is not signed or dated by the Grievance Coordinator showing that it was received and logged. (Id.) The Grievance Packet then provides a response to an appeal by the Facility Manager dated March 31, 2015. (Id.) The Facility Manager's Appeal Response, like the response to the initial grievance was originally numbered Grievance No. 554735, but was written over by hand as Grievance No. 554732. (Id.) Defendants provide no explanation for the handwritten changes to these documents.

In addition to the Grievance Packet, Defendants attached a spreadsheet listing the grievances filed by Minor. (POs, Ex. B) The spreadsheet shows that in addition to Grievance No. 554732, Minor filed other grievances with the Department around the same time as Grievance No. 554732. (Id.) The spreadsheet further shows that while Minor appealed other grievances through final review, he did not appeal Grievance No. 554732 past the second step of the Grievance Policy, appeal to the Facility Manager. (Id.) Nowhere on the spreadsheet is Grievance No. 554735 listed. (Id.) Defendants also attached to their POs an unsworn declaration by Dorina Varner, the records custodian of grievance appeals for the Department. (POs, Ex. C ¶ 8.) Ms. Varner declared that

19

she reviewed all the records and "[G]rievance [No.] 554732 was never appealed to final review, as such the grievance was never exhausted." (Id. ¶ 11.)

Rule 1028(a)(7) of the Pennsylvania Rules of Civil Procedure provides that a preliminary objection may be filed on the grounds that "(7) failure to exercise or exhaust a statutory remedy." Pa. R.C.P. No. 1028(a)(7). Rule 1028(b)(2) of the Pennsylvania Rules of Civil Procedure provides that "[t]he court shall determine promptly all preliminary objections. *If an issue of fact is raised, the court shall consider evidence by depositions or otherwise*." Pa. R.C.P. No. 1028(b)(2) (emphasis added). A note to Rule 1028(b)(2) states that "[p]reliminary objections raising an issue under subdivision (a) . . . (7) cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice to plead or no response will be required under Rule 1029(d)." Note to Pa. R.C.P. No. 1028(b)(2). When an issue of fact is raised by the preliminary objections, the court must resolve a disputed fact "through interrogatories, depositions, or an evidentiary hearing." Pelzer v. Wetzel, 101 A.3d 142, 144 (Pa. Cmwlth. 2014) (quoting Schmitt v. Seaspray-Sharkline, Inc., 531 A.2d 801, 803 (Pa. Super. 1987)). If a court of common pleas "fails to take evidence on a factual issue raised by preliminary objections, an appellate court may vacate the [court of common pleas'] order and remand for further proceedings." Pelzer, 101 A.3d at 144; see also Lox, Stock and Bagels, Inc. v. Kotten Mach. Co. of California, Inc., 395 A.2d 954, 956 (Pa. Super. 1978) ("when the evidence in the record does not adequately support the lower court's disposition of the preliminary objections, we will remand for further proceedings.")

Defendants' POs allege new facts and are endorsed with a notice to plead. Minor did not respond with any evidence, but rather responded with a

20

Memorandum of Law opposing the POs by making legal and factual arguments. Therein, Minor repeated the allegation in his Complaint that he was told that he could not file a grievance related to the February 24, 2015, incident and objected to the documents in the "Grievance Packet" on the basis that the documents contain handwritten cross-outs changing the grievance number from No. 554735 to No. 554732. (Memorandum of Law at 6.) Minor argued that he appealed Grievance No. 554735, which was the grievance challenging the misconduct charge, and repeats his allegation in the Complaint that he was not permitted to file a grievance on the abuse he suffered on February 24, 2015. (Id.)

In Brown, Samuel Brown, an inmate at SCI-Houtzdale, filed a suit in the federal district court alleging that the inaction of prison officials caused him to be assaulted by other inmates and that the officials were deliberately indifferent to his medical needs. Brown, 312 F.3d at 110-11. Brown alleged that he did not file a grievance because prison officials told him that the grievance process was not available to him until an investigation was completed. Id. at 111. The defendant filed a motion to dismiss for failure to exhaust his administrative remedies, which was granted by the district court without taking any evidence. Id. The United States Court of Appeals for the Third Circuit reversed. The court reasoned that the affirmative defense of failure to exhaust administrative remedies may, in appropriate cases, be the basis of a motion to dismiss. Id. However, the court decided to not affirm the dismissal because Brown's argument that he was induced to believe that he was required to wait for a security investigation must be viewed in the light most favorable to him, and that "[w]ithout further discovery, . . . there is insufficient evidence to find that Brown failed to exhaust his administrative remedies." Id. at 112. The court held that even though the instructions given by

21

prison officials were at odds with the Department's Grievance Policy, "[a]ssuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim . . . the formal grievance proceeding required by DC–ADM 804 was never 'available' to Brown within the meaning of 42 U.S.C. § 1997e." Id. at 113.

We find the Third Circuit's reasoning in Brown persuasive and apply it to the instant matter. The POs and the Complaint raise an issue of fact as to whether Minor was told he could not file a grievance because the acts were connected to Minor's own misconduct charge. Defendants have not presented any evidence on this point. The documents in the Grievance Packet that purportedly show that Minor did file a grievance are objected to by Minor, are clearly manipulated by someone's hand, and the spreadsheet listing Minor's grievance history and the unsworn declaration of Ms. Varner are all derivative of these manipulated documents. Defendants have not explained why the grievance forms were manipulated by hand. Even though it is clear that Minor did not follow the procedures provided for in the Grievance Policy, it is not certain, based on Minor's allegations and the questionable nature of the evidence presented by Defendants, that Minor failed to exhaust the remedies *available to him*. Therefore, we conclude that common pleas should have received additional evidence "through interrogatories, depositions, or an evidentiary hearing." Pelzer, 101 A.3d at 144. Accordingly, we will remand the matter to common pleas with instructions to take additional evidence to resolve the question of whether Minor was somehow prohibited from filing a grievance on the incident, and whether Minor exhausted his remedies under the Department's Grievance Policy.

22

For the foregoing reasons, we reverse common pleas' Order insofar as it sustains Defendants' first PO alleging that Defendants are immune to Minor's assault and battery claim, vacate common pleas' Order insofar as it sustains Defendants' second PO alleging failure to exhaust administrative remedies, and remand the matter so that common pleas may take additional evidence on whether Minor exhausted the administrative remedies available to him.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fred Minor,                                    :
                        Appellant              :
                                               :
            v.                                 :    No. 948 C.D. 2016
                                               :
Sgt. Dave Kraynak, D.K. Starling,              :
COI Walters, COI John Doe                      :

## O R D E R

    **NOW**, February 17, 2017, the Order of the Court of Common Pleas of Schuylkill County (common pleas) in the above-captioned matter, is hereby, **REVERSED** in part and **VACATED** in part. The Order is **REVERSED** insofar as it sustains Sgt. Dave Kraynak, D.K. Starling, COI Walters, and COI John Doe's (Defendants') first preliminary objection alleging sovereign immunity. The Order is **VACATED** insofar as it sustains Defendants' second preliminary objection alleging that Fred Minor failed to exhaust administrative remedies. The matter is **REMANDED** to common pleas for additional proceedings in accordance with the above opinion.

    Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge