# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Brown,                            :
                        Appellant       :
                                        :
            v.                          :       No. 511 C.D. 2021
                                        :       SUBMITTED:  June 17, 2022
Former C/O T. Hollis, C/O Smouse and    :
C/O Jones                               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  March 3, 2023**


Lamar Brown, proceeding *pro se*, appeals from an order of the Court of Common Pleas of Clearfield County denying Brown's petition to proceed *in forma pauperis* (IFP) and dismissing his complaint as frivolous pursuant to Pennsylvania Rule of Civil Procedure 240(j)(1), Pa.R.Civ.P. 240(j)(1).[1]  For the reasons set forth below, we reverse and remand for further proceedings.

---

[1] Rule 240(j)(1) provides:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed *in forma pauperis*, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Pa.R.Civ.P. 240(j)(1).

The facts as alleged in the complaint are as follows. Brown is an inmate who, during the timeframe relevant to this matter, was confined at the State Correctional Institution at Houtzdale (SCI-Houtzdale). Brown filed a complaint in the trial court against former Corrections Officer Trainees Hollis and Smouse, and former Corrections Officer 1 Jones (collectively, Officers), all of whom were employed at SCI-Houtzdale. Brown simultaneously filed an IFP petition along with a verified statement.

In the complaint, Brown alleges that Officer Hollis cornered him in a closet and coerced him into engaging in sexual acts with her by threatening to affect his upcoming parole if he did not comply. Several days later when Officer Hollis again approached Brown for sex he refused her advances, stating that he would file a grievance or a Prison Rape Elimination Act (PREA)[2] complaint if she continued. Officer Hollis became angry, again threatening Brown's parole and stating she would "get some guys to hurt" Brown. Original Record (O.R.), Compl. at 5. Several days later, when Officers Smouse and Jones were working on Brown's housing unit, Brown was physically assaulted by several inmates, sustaining bruises and contusions to his face and pain around his ribs. Officer Smouse allegedly stated to Brown after the incident: "That was for Hollis." O.R., Compl. at 6. Officers Smouse and Jones made further comments urging Brown to keep quiet about what happened and warning that if he said anything he would be killed. Brown specifically states that he did not file a grievance or PREA complaint about these incidents because he feared for his life, and that he initially told another corrections officer and medical staff that he sustained his injuries when he fell from his bunk.

---

[2] 34 U.S.C. §§ 30301-30309.

In the portion of his complaint titled "Claims for Relief," Brown asserts the following: Officer Hollis forcing him to perform sexual acts with her constitutes cruel and unusual punishment in violation of the Eighth Amendment as well as intentional infliction of emotional distress; Officer Hollis orchestrating a physical attack against Brown after he threatened to file a grievance or PREA complaint against her constitutes retaliation in violation of the First Amendment; Officer Smouse and Jones orchestrating a physical attack against Brown in aid of Officer Hollis constitutes deliberate indifference to Brown's safety in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and intentional infliction of emotional distress; and the actions of all three Officers in orchestrating the attack constitutes civil conspiracy in violation of Pennsylvania law. Brown requests that the trial court issue a declaratory judgment stating that the Officers violated his constitutional rights and committed the torts as outlined above. He further asks the trial court to award compensatory and punitive damages, as well as court costs.

By order dated March 5, 2021, the trial court *sua sponte* denied Brown's IFP petition and dismissed his complaint with prejudice pursuant to Rule 240(j)(1). The trial court determined that Brown's claims were frivolous because he failed to exhaust the available and appropriate administrative remedies before filing his complaint. Specifically, Brown admittedly did not file a grievance with the Department of Corrections (Department) regarding the Officers' actions or follow the Department's procedures with respect to the PREA.[3]

---

[3] The trial court also cited *Buehl v. Pennsylvania Department of Corrections*, 635 A.2d 217 (Pa. Cmwlth. 1991), for the proposition that "when 'ancillary proceedings can be utilized to resolve issues raised in a declaratory judgment petition, the declaratory judgment action should be dismissed.'" *Id.* at 218 [quoting *Prudential Prop. and Cas. Ins. Co. v. McDaniel*, 493 A.2d 731, 732 (Pa. Super. 1985)].

Brown then appealed to this Court, with his notice of appeal docketed by the trial court on May 5, 2021. Because this was more than 30 days after issuance of the trial court's order from which Brown seeks to appeal, *see* Pa.R.A.P. 903(a), we issued an order directing the parties to address the issue of timeliness in their principal briefs on the merits or in an appropriate motion. Brown's merits brief, however, fails to address the issue of timeliness, and the Officers filed a Notice of Non-Participation on March 25, 2022, indicating that they would not be participating in this appeal as the matter was dismissed by the trial court as frivolous prior to service.

Before we reach the merits, we must address the issue of whether Brown's appeal was timely filed as this goes to our jurisdiction. In general, a notice of appeal must be "filed within 30 days after the *entry* of the order from which the appeal is taken." Pa.R.A.P. 903(a) (emphasis added). As this Court has explained,

> the [30]-day appeal period, mandated by Pa.R.A.P. 903(a), does not commence until an order is "entered" by the trial court. Pursuant to Pa.R.A.P. 108, a trial court's order is not "entered" until that order has been entered by the Prothonotary on the docket *and* notice of the order's entry has been given to the parties by the Prothonotary as required by Pa.R.C[iv].P. [] 236.

*Gomory v. Dep't of Transp., Bureau of Motor Vehicles*, 704 A.2d 202, 204 (Pa. Cmwlth. 1998) (citation omitted, emphasis in original).

Here, while the trial court docket reflects the issuance of the order dated March 5, 2021, there is no corresponding entry demonstrating when, or even if, Rule 236 notice was given to the parties. The vague notation on the docket of "1 cc plff 1 cc R Reifer 1 cc CA," without a corresponding date or reference to Rule 236, is not sufficient to satisfy the requirements of the rules, the very purposes of which are

4

"to promote clarity" and "eliminat[e] the need for a case-by-case factual determination." *Frazier v. City of Phila.*, 735 A.2d 113, 115 (Pa. 1999). The fact that Brown received notice of the trial court order at some point in time does not equate to compliance with Rule 236. *See id.* ("[t]hat the parties may have received notice of the order does not alter the formal date of its entry"). In addition, further review of the record demonstrates that the trial court received Brown's appeal *prior to* the May 5, 2021 date indicated on the docket. For example, (1) Brown's notice of appeal is dated **March 15**, 2021;[4] (2) the trial court issued an order dated **May 4**, 2021 – one day before the entry reflecting his notice of appeal – granting Brown IFP status for purposes of his appeal; and (3) there are repeated indications that the trial court corresponded with Brown in March and April of 2021 regarding a purported technical deficiency in his appeal paperwork.[5] It is also noteworthy that the trial court declined to issue an opinion pursuant to Pa.R.A.P. 1925(a), which it could have used to advocate that Brown's appeal be quashed or dismissed as untimely filed. Given all of the above, we decline to *sua sponte* dismiss Brown's appeal as untimely. We also decline to remand the matter for further proceedings as to the issue of timeliness or for the trial court to officially comply with Rule 236 as this would be a waste of judicial resources under these particular circumstances.

---

[4] *See Kittrell v. Watson*, 88 A.3d 1091, 1096 (Pa. Cmwlth. 2014) ("Under the prisoner mailbox rule, a prisoner's *pro se* appeal is deemed filed at the time it is given to prison officials or put in the prison mailbox.") (citations omitted). While the date Brown provided on the notice of appeal may not, in and of itself, be enough to satisfy the prisoner mailbox rule, it further calls into question the accuracy of the May 5, 2021 date on the trial court's docket.

[5] Specifically, the record includes correspondence from Brown indicating that he received a letter from the trial court dated **March 26**, 2021, explaining that he needed to either file the correct number of copies of his notice of appeal or submit a petition to proceed IFP on appeal. This correspondence from Brown is dated April 22, 2021, and indicates that his initial notice of appeal was filed with the trial court on **March 16**, 2021. The record does *not* contain the trial court's March 2021 letter to Brown, nor are there any notations on the docket regarding same.

As such, we now turn to Brown's substantive arguments that the trial court erred in dismissing his complaint as frivolous for failure to exhaust administrative remedies. In particular, we begin with Brown's claim that he falls within one of the exceptions to the exhaustion requirement because of the nature of the Officers' actions and threats made toward him.

An action is frivolous under Rule 240(j) "if, on its face, it does not set forth a valid cause of action." *McGriff v. Vidovich*, 699 A.2d 797, 799 (Pa. Cmwlth. 1997); *see also* Pa.R.Civ.P. 240(j)(1), *Note* ("A frivolous action or proceeding has been defined as one that 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319[] (1989)."). Among the facial defects that can be considered by trial courts is the affirmative defense of failure to exhaust administrative remedies. *Paluch v. Palakovich*, 84 A.3d 1109, 1113-14 (Pa. Cmwlth. 2014). Generally, an inmate must "exhaust 'administrative remedies as are available' before filing suit asserting federal claims." *Minor v. Kraynak*, 155 A.3d 114, 124 (Pa. Cmwlth. 2017) [quoting Section 1997e(a) of the Federal Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a)]; *see also* Section 6603(a) of the Pennsylvania Prison Litigation Reform Act, 42 Pa.C.S. § 6603(a). The United States Supreme Court has explained that "proper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotation omitted, emphasis in original). In *Kittrell v. Watson*, 88 A.3d 1091, 1092-93 (Pa. Cmwlth. 2014), we outlined each of the necessary steps in the Department's administrative procedures known as the Inmate Grievance Review System.

As the trial court pointed out, Brown concedes that he did not file any grievances or a PREA report regarding the Officers' actions alleged in the complaint,

let alone complete each of the steps of the Department's grievance process through to exhaustion. What the trial court neglected to consider, however, are the exceptions to the exhaustion requirement; namely, situations where an administrative remedy is considered unavailable to an inmate. One situation where an administrative remedy is unavailable is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). Where prison "officials misle[a]d or threaten[] individual inmates so as to prevent their use of otherwise proper procedures[] . . . such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*; *see also Minor*, 155 A.3d at 125 (recognizing "if an agency prevents a party from pursuing a remedy, the agency does not 'hold out' a remedy, and the remedy cannot be exhausted").

The allegations in Brown's complaint, which we must accept as true at this juncture, raise questions as to whether he had an "available" administrative remedy to exhaust. Brown specifically alleges that Officer Hollis coerced him into engaging in sexual acts by threatening his parole; that Officer Hollis threatened to "get some guys to hurt" Brown when he turned down her repeated advances, O.R., Compl. at 5; that Brown was assaulted just a few days later; and that Officers Smouse and Jones warned Brown that he would be killed if he spoke up. Finally, Brown explicitly avers that he did not file a grievance or PREA complaint about these incidents because he feared for his life. These serious and troubling allegations of threats and violence raise legal and factual questions regarding whether the administrative remedies were actually available to Brown so as to require their

7

exhaustion.[6] *See, e.g.*, *Hill v. Wetzel* (Pa. Cmwlth., No. 699 C.D. 2021, filed Jan. 5, 2023) (reversing trial court's dismissal of complaint under Rule 240(j)(1) for failure to exhaust administrative remedies because inmate alleged appellees interfered with his ability to file grievances); *Parran v. Rozum* (Pa. Cmwlth., No. 239 C.D. 2012, filed Jan. 4, 2013);[7] *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002) (holding dispute of fact remained regarding failure to exhaust administrative remedies where inmate alleged he was told to wait until security investigation was complete before filing a grievance).

Accordingly, we conclude that the trial court erred in dismissing this action as frivolous for failure to exhaust administrative remedies at this early point in the proceedings.[8] We must therefore reverse and remand for further proceedings.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[6] Even the trial court itself noted that Brown's "fear of retaliation may be rational[.]" Trial Ct. Order, dated March 5, 2021, at 3.

[7] While not precedential, unreported panel opinions of this Court may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

[8] Given our disposition we need not address the remaining arguments Brown raises on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lamar Brown, : 
                 Appellant : 
                 : 
           v. :   No. 511 C.D. 2021
                 : 
Former C/O T. Hollis, C/O Smouse and : 
C/O Jones : 

## O R D E R

AND NOW, this 3rd day of March, 2023, the order of the Court of Common Pleas of Clearfield County in the above-captioned matter is REVERSED, and the matter is REMANDED to the trial court for further proceedings in accordance with the foregoing opinion.

Jurisdiction is relinquished.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita